ERNEST W. JACKSON, Plaintiff-Appellant, v. HEARN BROTHERS' INC., a corporation of the State of Delaware, and C & L INC., a corporation of the State of Delaware, Defendants-Appellees.

*(August* 12, 1965)

CAREY, Justice, SEITZ, Chancellor, and WRIGHT, Judge, sitting.

*Hiram W. Warder,* for plaintiff-appellant.

*Warren B. Burt* and *Roger Sanders,* of Prickett & Prickett, for Hearn Brothers, Inc., defendant appellee.

*H. Alfred Tarrant, Jr.,* of Cooch & Taylor, for C&L, Inc., defendant appellee.

Supreme Court of the State of Delaware, No. 104, 1964.

CAREY, Justice:

Plaintiff-below seeks reversal of a judgment of the Superior Court based upon a jury verdict.

Hearn Brothers, Inc. (Hearn) operates a supermarket in Wilmington. C & L, Inc. (C & L) is a wholesaler whose warehouse adjoins the supermarket. It is customary, whenever Hearn gives C & L an order for groceries, for an employee of the latter to make delivery by borrowing a grocery cart from Hearn. On the day plaintiff was injured, he was a customer in the supermarket. He was injured by either stepping against, or being struck by, a grocery cart used by Albert Carucci, an employee of C & L who was making a delivery of groceries. The original complaint contained a count charging strict liability of the

defendants for using a device inherently dangerous. On motion before trial, that count was stricken by the Court below. During discovery proceedings, Hearn was requested to admit that it had abandoned all control over the cart and the manner of its operation. Its response was a simple admission. Counsel later, during a preliminary argument, disagreed in their interpretation of the scope and meaning of this admission and the Court below granted a motion to amend the answer to that request. Both rulings are challenged here.

In discussing the application of the "strict liability" theory, plaintiff does not suggest that the cart was defective in any way or that it was inherently dangerous per se. The argument is, as we understand it, that the jury should have been allowed to determine whether the operation of the cart through the aisles of the store during business hours was an inherently dangerous activity.

Assuming, without deciding, that this Court would apply the rule of strict liability in a proper case, we think that its application in this case is unjustified. The general nature of these carts and their operation in supermarkets is well known and may be judicially noticed. Such stores make a common practice of using this type of cart for restocking their shelves with merchandise while customers are present. The cart presents no great hazard when used with proper care; certainly, its operation cannot justifiably be called an "ultrahazardous activity" as that term is defined in Restatement, Torts Sec. 520, nor is it properly described as "abnormally dangerous" within the meaning of Professor Prosser's language in Sec. 77 of his Law of Torts. It is when the cart is not used with proper care that an appreciable hazard is created. This is simply another way of saying that liability depends upon the usual rules of negligence law.

The cases cited by plaintiff do not conflict with the foregoing view. In *Fahey v. Niles,* 7 Boyce 454, 108 A. 135, Judge Boyce said to the jury that a person using a dangerous instrument like a blowtorch to remove paint from a house must exercise due care to see that it does not set the house on fire, otherwise he is liable for his negligence; the issues presented to the jury were the usual ones of negligence and

proximate cause. In *Tyndall v. Rippon,* 5 Terry 458, 61 A. 2d 422, the Court spoke of an automobile as a dangerous instrumentality; but the case had nothing to do with strict liability, the issue being a question of wilful or wanton conduct under our guest statute. In *Barmore v. Vicksburg, S & P. Ry. Co.,* 85 Miss. 426, 38 So. 210, 70 L.R.A. 627, the appellate Court ordered submitted to a jury the question of whether the operation of a railroad tricycle was a dangerous activity, which meant one "liable to inflict serious injury to others, when operated in the customary method of use". As we understand it, that ruling simply means that the Court could not take judicial notice of the hazards presented by the use of a railroad tricycle, and that this issue had to be determined by a jury.

The second problem raised, which concerns the amendment of an answer to a request for admissions, may be academic in view of the foregoing ruling. It would appear that the admission pertains only to Hearn's liability under the doctrine of respondeat superior. Any need to discuss that doctrine would seem to be unnecessary in view of the jury's verdict, which necessarily implies a finding that Mr. Carucci was not negligent or that Mr. Jackson was contributorily negligent.

Because, however, there may be some other reason not entirely clear to us, we will discuss the matter further. Dissension over the meaning of defendant's original admission arose in the briefs and argument on a motion for summary judgment. Defendants promptly moved to amend the answer, alleging a desire to clarify it and eliminate the misunderstanding which had arisen. The Court below was abviously satisfied with the explanation and allowed the amendment. We think this action was well within the Court's discretionary powers. 2A Barron & Holtzoff, Federal Pleading and Practice Sec. 838; *United States v. Lemons,* D.C., 125 F. Supp. 686; *United States v. Wimbley,* D.C., 125 F. Supp. 691. No prejudice to the plaintiff has been shown, and the change was made well in advance of trial. There is no reason to hold that the Judge abused his discretion. The only case relied upon by the plaintiff is *International Carbonic Eng. Co. v. Natural Carb. Co.,* D.C.,

57 F. Supp. 248, decided prior to the amendment of Federal Civil Rule 36. It has little or no materiality; its holding was merely that a party, having answered a request for admissions, cannot raise the objection of irrelevancy at the trial.

The judgment below must be affirmed.