******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

APPENDIX

## JULIAN POCE ET AL. *v.* O & G INDUSTRIES, INC., ET AL.*

Superior Court, Judicial District of Hartford
File No. CV-17-6074254-S

Memorandum filed September 30, 2019

*Proceedings*

Memorandum of decision on motion for summary judgment. *Motion granted in part.*

*Austin Berescik-Johns* and *Paul Levin*, for the plaintiffs.

*Michael S. Lynch*, for the named defendant.

*Michael J. Dugan* and *Jacqueline A. Maulucci*, for the defendant Southern Middlesex Industries, Inc.

*Opinion*

NOBLE, J. At issue in this asbestos exposure case is whether a genuine issue of material fact exists as to whether the defendants owed these plaintiffs a duty of care. In separate motions for summary judgment, the defendants each argue they owed no duty of care to the plaintiffs. The plaintiffs argue that they were owed a duty of care, which can arise outside of a contract and based on circumstances. For the following reasons, the defendant O & G's motion for summary judgment is granted, and the defendant SMI's motion for summary judgment is denied.

## FACTS

This action arises from a building project that took place at Wethersfield High School. The plaintiffs, Julian Poce, Skerdinand Xhelaj, Michael Meredith, Erjon Goxhaj, and Fatjon Rapo, worked on that project during which they allege that they were exposed to asbestos. The plaintiffs commenced this action with a thirty count complaint against the defendants, Southern Middlesex Industries, Inc. (SMI), and O & G Industries, Inc. (O & G), on December 27, 2016, and later filed an amended complaint on May 19, 2017. Following separately filed motions to strike by both defendants, the court issued a memorandum of decision on December 5, 2017, granting the motions to strike counts sounding in negligence as to both defendants; premises liability as to O & G; and recklessness as to O & G. Counts six through ten and twenty-six through thirty of the plaintiffs' complaint remain viable, sounding in negligent infliction of emotional distress as to both defendants.

In their complaint, the plaintiffs allege the following facts. The plaintiffs were employed as mason laborers by Connecticut Mason Contractors, Inc. At various times between 2013 and 2016, the plaintiffs were assigned to a building project at Wethersfield High School. While working there, the plaintiffs were repeatedly exposed to asbestos by working in areas of the building designated by the defendant O & G, the project manager, thereby disturbing the floors, walls, and ceilings, which contained asbestos.

The plaintiffs further allege that O & G had actual or constructive notice of dangerous site conditions and defects, including the presence of asbestos and PCBs, and failed to remediate the hazards. O & G, as construction manager, supervised all phases of work at the high school, exercising possession and control of the site. O & G controlled, or had the ability to control, the means and methods of work being performed at the site, and could have prevented the designation of work and/or suspended work in areas of the building that contained asbestos. Work areas, however, were not sampled, remediated, and tested prior to the plaintiffs' exposure, and the plaintiffs were not provided appro-

priate protective equipment. Asbestos conditions were present and disturbed in such a manner as to make it highly probable toxic substances would be breathed. O & G was aware of the exposure and allowed it to repeatedly occur, in spite of an agreement signed by the town of Wethersfield, O & G, and the plaintiffs' employer that required O & G to observe safety protocols and procedures. The plaintiffs, mason laborers, were not trained in asbestos protection, and O & G did not arrange for proper training at the site. The plaintiffs had not been advised of a need for asbestos protection. O & G told the plaintiffs' employer that the plaintiffs would only be required to work in areas that did not contain asbestos or where suitable asbestos remediation had been effected.

Finally, the plaintiffs allege that the defendant SMI performed demolition work involving asbestos remediation at the site. SMI did not properly section off regulated work areas to ensure the plaintiffs were not exposed to hazardous materials being remediated. SMI's conduct contributed to the lack of adequate testing and sampling of materials, and to the lack of advance warning to the plaintiffs.

In their allegations of negligent infliction of emotional distress, the plaintiffs incorporate the prior allegations of the complaint and allege that the defendants created an unreasonable risk of causing emotional distress serious enough that it may result in illness or bodily harm; it was foreseeable that such distress could result from the defendants' conduct; and that the defendants' conduct was the cause of the plaintiffs' emotional distress.

The present motions for summary judgment were filed on September 7, 2018, by the defendant O & G, and on October 31, 2018, by the defendant SMI. In support of its motion, O & G submitted as exhibits document #028216, dated October 15, 2013; AIA Document C132, the August 15, 2012 standard form of agreement between the town of Wethersfield and O & G for additions and renovations to Wethersfield High School; and AIA Document A232, general conditions of the contract for construction, with the same parties. SMI submitted with its motion the sworn affidavit of Michael J. Dugan, Esq.; deposition transcripts of Jeff Bridges; the sworn affidavit of Darrell MacLean; AIA Document A132, the November 22, 2013 standard form of agreement between the town of Wethersfield and SMI regarding additions and renovations to Wethersfield High School; and a change order dated July 27, 2016. The plaintiffs filed an objection to O & G's motion for summary judgment on December 4, 2018, and to SMI's motion on March 25, 2019. In opposing the two motions separately, the plaintiffs submitted another AIA Document A132, standard form of agreement between the town of Wethersfield and Connecticut Mason Contractors, Inc., for additions and renovations to Wethersfield High School;

notes from a meeting of the Wethersfield Town Council; a page of SMI's website; and the affidavits and depositions of multiple persons speaking to O & G's general authority on the project site and SMI's experience in asbestos remediation and inadequate performance on site. O & G filed a reply on January 10, 2019, and SMI did so on April 16, 2019, with a copy of an asbestos abatement monitoring report. The plaintiffs filed surreplies on April 26, 2019, with the sworn affidavit of Franklin A. Darius, Jr.[1] Oral argument was heard on both the present motions for summary judgment on June 3, 2019.

## LEGAL STANDARD

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534, 51 A.3d 367 (2012). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 821, 116 A.3d 1195 (2015).

"It is axiomatic that in order to successfully oppose a motion for summary judgment by raising a genuine issue of material fact, the opposing party cannot rely solely on allegations that contradict those offered by the moving party . . . such allegations must be supported by counteraffidavits or other documentary submissions that controvert the evidence offered in support of summary judgment." *GMAC Mortgage, LLC* v. Ford, 144 Conn. App. 165, 178, 73 A.3d 742 (2013). "Mere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." (Internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Coolbeth*, 147 Conn. App. 183, 193, 81 A.3d 1189 (2013), cert. denied, 311 Conn. 925, 86 A.3d 469 (2014). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Bozelko* v. *Papastavros*, 323 Conn. 275, 282, 147 A.3d 1023 (2016).

## ANALYSIS

### I

### O & G's MOTION FOR SUMMARY JUDGMENT

The defendant O & G argues that summary judgment should be granted on the ground that it owed no duty to the plaintiffs because issues relating to hazardous

materials were specifically excluded in its contract from its scope of work. The plaintiffs counter, arguing that legal duty is a question of fact; that O & G supervised safety at the worksite; that it had a duty of care to third parties because it was in control of the site; and that it had a duty of care under OSHA regulations. In its reply, O & G further argues that its contract provides that it did not have control over construction means or safety precautions at the site, and that it had no duty under the common law or OSHA regulations.

"A cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury . . . . Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier consider whether that duty was breached." (Citation omitted.) *Ruiz* v. *Victory Properties*, *LLC*, 315 Conn. 320, 328, 107 A.3d 381 (2015). "To prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." (Internal quotation marks omitted.) *Grasso* v. *Connecticut Hospice, Inc.*, 138 Conn. App. 759, 771, 54 A.3d 221 (2012); see also *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 446–48, 815 A.2d 119 (2003). "[L]ike all negligence claims, both subsets of negligent infliction of emotional distress claims require proof of the breach of a legally recognized duty, causing injury." *Marsala* v. *Yale-New Haven Hospital, Inc.*, 166 Conn. App. 432, 444–45, 142 A.3d 316 (2016).

"[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 277–78, 654 A.2d 737 (1995). "It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties." Id., 278. "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." Id., 279. "Negligence cannot be predicated upon the failure to perform an act which the actor was under no duty or obligation to perform." *Behlman* v. *Universal Travel Agency, Inc.*, 4 Conn. App. 688, 691, 496 A.2d 962 (1985).

In the present case, the defendant's contract provides in relevant part: "The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral." Def. Ex. 2, AIA Doc. A232 § 1.1.2. Its contract further provides that

"[u]nless otherwise required in this agreement, the Construction Manager shall have no responsibility for the discovery, presence, handling, removing or disposal of, or exposure of persons to, hazardous materials or toxic substances in any form at the Project site." Def. Ex. 2, AIA Doc. C132, § 10.6. O & G is named in the agreement as the construction manager. Def. Ex. 2, AIA Doc. C132, 1. Under the terms of its contract, O & G was not responsible for discovering or removing any asbestos on the worksite. Accordingly, it owed no duty to the plaintiffs regarding any exposure to the substance that they may have suffered.

The plaintiffs first argue that a proper analysis of legal duty ordinarily leads to a question of fact. Such issues, on the contrary, pose questions of law for the court. See *Ruiz* v. *Victory Properties, LLC*, supra, 315 Conn. 328. The plaintiffs contend that O & G was charged with supervising safety, and had the authority to control work performed by the plaintiffs, which creates a genuine issue of material fact as to who was in control of the project site and whether O & G was responsible for avoiding exposures. The question of which party was in control of the site is not at issue in the present case. Nonetheless, the defendant's contract provides that "[t]he Construction Manager . . . will not have control over . . . the safety precautions and programs in connection with the work . . . ." Def. Ex. 2, Doc. A232, § 4.2.5. Additionally, as has been established in the previous paragraphs, under the terms of its contract, the defendant was not responsible specifically for the discovery or removal of asbestos at the worksite. Thus, O & G was not in control of the relevant worksite safety procedures.

The plaintiffs contend that O & G owed them a duty of care as third parties under Connecticut common law. With regard to third-party liability, "the undertaking party not only will assume duties to third parties expressly set forth in the contract itself, as well as pass-through duties owed by the hiring party that are assigned or transferred to the undertaking party, but also will assume a duty of care to protect third parties from foreseeable, physical harm within the scope of the services to be performed." (Emphasis in original.) *Demond* v. *Project Service, LLC*, 331 Conn. 816, 846, 208 A.3d 626 (2019). O & G did not assume a contractual duty to the plaintiffs, nor was it assigned any such duties by the town. Consequently, any duties that it assumed to the plaintiffs were limited to foreseeable physical harm within the scope of the services to be performed. As responsibility for discovering and removing asbestos was specifically excluded from the scope of O & G's services, it did not owe the plaintiffs a duty under a theory of third-party liability.

Lastly, the plaintiffs claim that O & G owed them a duty of care arising from OSHA regulations. "Both the

federal and state OSHA statutes provide that such regulations may not be used to create a private cause of action for injuries arising out of or in the course of employment." *Mingachos* v. *CBS*, *Inc.*, 196 Conn. 91, 112, 491 A.2d 368 (1985). "OSHA regulations, if applicable, may be used as evidence of the standard of care in a negligence action against an employer . . . . Where an OSHA regulation applies in a civil case, it can provide helpful guidance to the jury in its deliberations." (Citation omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 188, 700 A.2d 38 (1997). Nonetheless, "even if an OSHA violation is evidence of [a defendant's] negligence . . . [the defendant] must owe a duty . . . under a theory of liability independent of OSHA . . . . OSHA regulations can never provide a basis for liability . . . . The [Occupational Safety and Health] Act itself explicitly states that it is not intended to affect the civil standard of liability." (Citations omitted; internal quotation marks omitted.) *Ellis* v. *Chase Communications*, *Inc.*, 63 F.3d 473, 478 (6th Cir. 1995). In the present case, the plaintiffs have not provided an OSHA statute that is applicable to O & G. Nonetheless, it has already been established that O & G did not owe the plaintiffs a duty of care with regard to the discovery and removal of asbestos, and OSHA cannot establish such a duty independently. Accordingly, there is no genuine issue of material fact that O & G did not owe the plaintiffs a duty of care with regard to the discovery and removal of asbestos and its motion for summary judgment is granted.

## II

### SMI's MOTION FOR SUMMARY JUDGMENT

The defendant SMI also moves for summary judgment on the ground that it owed no duty to the plaintiffs. SMI argues that it owed no duty of care to the plaintiffs because it was not hired to identify asbestos; rather, it was hired to remove hazardous materials that had already been identified by other contractors. The plaintiffs contend that an analysis of legal duty ordinarily leads to a question of fact; SMI was in the best position to ensure the safety of the plaintiffs; SMI performed its work in such a way as to create hazardous situations; SMI owed a duty of care under Connecticut common law; and SMI owed the plaintiffs a duty of care arising from OSHA regulations. SMI argues in its reply that it had no duty to perform work that was beyond the scope of its contract.

"Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant . . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm

of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular, consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Sic* v. *Nunan*, 307 Conn. 399, 407–408, 54 A.3d 553 (2012). When a "case is close enough to the margin of reasonable foreseeability . . . it would be inappropriate to foreclose the foreseeability inquiry as a matter of law." *Ruiz* v. *Victory Properties, LLC*, 135 Conn. App. 119, 127, 43 A.3d 186 (2012), aff'd, 315 Conn. 320, 107 A.3d 381 (2015).

SMI's contract provides in relevant part that "[t]he Contractor shall perform all work required by the Contract Documents for Bid Package 2.01—Abatement & Demolition." Def. Ex. C, AIA Doc. A132, Art 2. In his sworn deposition, former Wethersfield town manager Jeff Bridges stated that "Southern Middlesex Industries was retained or hired to perform both clean and hazardous material demolition." Def. Ex. A, Bridges Dep., 12. Bridges further stated that it was correct that "between EnviroMed and Fuss & O'Neill, those entities, as part of their job, identified hazardous materials within the Wethersfield High School . . . . And based upon the work that Fuss & O'Neill and EnviroMed did in identifying the hazardous materials, the town then hired an abatement contractor to remove the hazardous materials that had previously been identified . . . ." Def. Ex. A, Bridges Dep., 71. SMI's President, Darrell MacLean, states in his sworn affidavit that "SMI submitted a bid to the [t]own of Wethersfield . . . to perform demolition and hazardous material removal, including asbestos abatement, for the renovation of the Wethersfield High School . . . ." Def. Ex. B, MacLean Aff., 1. MacLean further stated that "Fuss & O'Neill conducted an environmental assessment of the building for the purpose of identifying and locating the presence of hazardous materials in the building which would have to be removed." Def. Ex. B, MacLean Aff., 1.

On the other hand, Carlos Texidor, project manager for Fuss & O'Neill, when asked in his deposition whether anyone was keeping an eye out for suspect materials at times when Fuss & O'Neill were not present, stated: "To my knowledge I don't know, other than SMI." Pl. Ex. 4, 37. Darrell MacLean, President of SMI, stated that his employees on several occasions came across suspicious material that was found to be asbestos. Pl. Ex. 5, 39–45. The procedure was that "[i]f [the employees] have any doubt, they're supposed to just stop, identify it, and notify the supervisor." Pl. Ex. 5, 39. SMI additionally is alleged to have created a hazard by placing material into non-asbestos dumpsters that was found to contain asbestos. Pl. Ex. 4, 32–33.

It is evident that SMI was not hired for the specific purpose of identifying and locating hazardous materi-

als. That alone, however, does not establish that it bore no responsibility whatsoever for the identification and discovery of asbestos on the worksite while it performed its demolition and remediation duties. Questions of fact therefore remain regarding SMI's capacity to identify any previously undiscovered hazardous materials to which the plaintiffs allege they were exposed. The defendant SMI's motion for summary judgment is accordingly denied.

## CONCLUSION

For the foregoing reasons, the defendant O & G's motion for summary judgment is granted and the defendant SMI's motion for summary judgment is denied.

* Affirmed. *Poce* v. *O & G Industries, Inc.*, 210 Conn. App.     ,     A.3d (2022).

[1] Practice Book § 11-10 (c) provides: "Surreply memoranda cannot be filed without the permission of the judicial authority." The plaintiffs did not request permission of the court to file a surreply. Our courts, however, have exercised discretion to consider surreplies filed without permission; see *Viradia* v. *Quartuccio*, Superior Court, judicial district of New Haven, Docket No. CV-17-6070053-S (February 27, 2018) (66 Conn. L. Rptr. 1); and the court in its discretion will consider it. Secondly, the plaintiffs have submitted evidence with their surreplies. "It is within the trial court's discretion whether to accept or decline supplemental evidence in connection with a motion for summary judgment." *Corneroli* v. *Kutz*, 183 Conn. App. 401, 425 n.10, 193 A.3d 64 (2018). In its discretion, the court will also consider these submissions.